Ms. Frances Ross, Chair Capitol Zoning District Commission 1515 West Seventh Street, Suite 310 Little Rock, Arkansas 72201
Dear Ms. Ross:
This is in response to your request for an opinion regarding conflicts of interest for members of the Capitol Zoning District Commission. Specifically, you have asked for an opinion on the following questions:
 1. Please clarify what constitutes a conflict of interest generally, as well as what constitutes the appearance of a conflict that should cause a commissioner to recuse.
 2. Please clarify whether a commissioner who does not vote because of a possible conflict should participate in formal discussions with the applicant.
 3. What is the validity of a commissioner's vote on a motion if your analysis shows that commissioner to have a conflict but the commissioner does not recuse.
 4. Please give a specific review of each of the three cases mentioned below with indication as to whether the commissioner should recuse.
With regard to the foregoing questions, it should be noted initially that the statutes pertaining to the Capitol Zoning District Commission do not contain any provisions concerning conflicts of interest. See generally A.C.A. §§ 22-3-301 to -311 (1987 and Cum. Supp. 1993). Thus, my responses to your questions will be based upon general precepts regarding conflicts of interest for public officials and upon the Arkansas Administrative Procedure Act, which is codified at A.C.A. §25-15-201 et seq. (Repl. 1992 and Cum. Supp. 1993).
In response to your first question, it has been stated that the phrase "conflict of interest," when used to suggest disqualification of a public official from performing his or her duties, generally refers to "a clash between the public interest and the private pecuniary interest of the individual concerned."Gardner v. Nashville Housing Auth. of Metro. Gov't of Nashvilleand Davidson County, Tennessee, 514 F.2d 38 (6th Cir. 1975). The "conflict of interest theory" is based "on the fact that an individual occupying a public position uses the trust imposed in him and the position he occupies to further his own personal gain. It is the influence he exerts in his official position to gain personally in spite of his official trust which is the evil the law seeks to eradicate." City of Coral Gables v. Weksler,164 So.2d 260, 263 (Fla.App. 1964). The editors of American Jurisprudence have stated the following with regard to conflicts of interest for public officials:
 A public officer owes an undivided duty to the public whom he serves, and is not permitted to place himself in a position which will subject him to conflicting duties or expose him to the temptation of acting in any manner other than in the best interests of the public. In other words, a public official may not use his official power to further his own interest.
63A Am. Jur.2d Public Officers and Employees § 321 (1984).
This office has also addressed in previous attorney general opinions the subject of conflicts of interest for public officials. In Op. Att'y Gen. No. 90-160, the question was posed as to whether it would represent a conflict of interest for members of the Advertising and Promotion Commission, who were also members of the Chamber of Commerce Executive Committee, to vote on awarding a contract for services to the chamber; in response to that inquiry, the following was stated:
 If the primary benefit of the Commission member's action flows to another with no distinct pecuniary interest to the member, it may reasonably be concluded that the member need not disqualify from voting on the matter. If, however, the contract gives rise to a pecuniary interest of a Commissioner that is distinct from the public interest, a prohibited conflict of interest may result.
See also Op. Att'y Gen. No. 86-267 (stating that, "[g]enerally, an officer would be disqualified from participating in a decision when he has a personal interest which might interfere with the unbiased discharge of his duty to the public.").
Finally, reference should also be made to the code of ethics and conflict of interest provisions in the Arkansas Code which apply to public officials and state employees. In this regard, A.C.A. §21-8-304(a) (1987) provides the following:
 No public official or state employee shall use his position to secure special privileges or exemption for himself, his spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he has a substantial financial relationship, that is not available to others, except as may be otherwise provided by law.
[Emphasis added.]
With regard to that portion of your first question which pertains to an appearance of a conflict of interest which would require disqualification from matters before the commission, the Arkansas Supreme Court has held that "administrative agency adjudications are also subject to the `appearance of bias' standard which is applicable to judges." Madden v. United States Associates,40 Ark. App. 143, 149, 844 S.W. 2d 374 (1992), citing Acme BrickCo. v. Missouri Pacific R.R., 307 Ark. 363, 821 S.W.2d 7
(1991).[1] The Court in Acme Brick also discussed "the rule of necessity," which is an exception to disqualification based on "an appearance of bias." In this regard, the Court, citing C.J.S., stated the following:
 Under the doctrine or rule of necessity, it has been held that administrative officers or bodies are not disqualified because of bias, prejudice, or prejudgment of the issues where they alone have the power and authority to act and where, if they are disqualified, action cannot otherwise be taken, particularly where a failure of justice would result if they are not permitted to act. . . .
 The doctrine or rule of necessity has been held to apply only where the disqualification of the alleged prejudiced member or members of the tribunal would destroy the tribunal itself, leaving no competent tribunal to function or to act.
Acme Brick Co., 307 Ark. at 369-370, citing 73 C.J.S. PublicAdministrative Law and Procedure § 61(b) (1983).
The general precepts related to conflicts of interest for public officials, as outlined above, hopefully will provide some guidance for members of the commission. It should be recognized, however, that the decision as to whether a particular interest on the part of a public official is sufficient to disqualify him or her from going on or participating in actions taken by the public body is a factual one and depends on circumstances in the particular case. Copple v. City of Lincoln, 202 Neb. 152,274 N.W.2d 520 (1979). Accordingly, it is not possible to determine and set forth in an attorney general's opinion each and every scenario which would represent an impermissible conflict of interest or an appearance of bias on the part of commission members.
With regard to your second question, it is my opinion that, if a commission member disqualifies himself or herself from voting on a matter before the commission due to a conflict of interest, that member should also refrain from participation in formal discussions with the applicant which take place prior to the vote. With respect to zoning and planning boards, the following has been stated on this subject: "Where a member has disqualified himself, he must take no part in the hearing or in the process of decision. Withdrawal is not accomplished if the member presides at the hearing but does not vote." 83 Am.Jur.2d Zoning andPlanning § 812 (1992). In my opinion, the rationale behind conflict of interest prohibitions is equally applicable to all forms of participation in the matter before the public body.
With regard to your third question, it is my opinion that a commissioner's vote is valid unless challenged by one of the parties involved and a court finds that a conflict of interest existed on the part of the commission member. Pursuant to A.C.A. § 22-3-310(a) (1987), "[a]ny person aggrieved by any rule, regulation, decision, or order of the Capitol Zoning District Commission may appeal the action to the Circuit Court of Pulaski County." Thus, if a party believes a commission member should not have participated in matters involving his application due to a conflict of interest, the party may raise the issue in an appeal of the decision. Under such circumstances, the court would decide whether a conflict of interest, in fact, existed, and the effect of such conflict on the commissioner's vote or on the action taken by the commission. Some courts have held that the governmental action taken is invalidated if a member of the public body is shown to have had a conflict of interest. In this regard, it has been stated that the reasoning underlying the common law rules pertaining to conflicts of interest is that "[t]he public is entitled to have their representatives perform their duties free from any personal or pecuniary interest that might affect their judgment." Netluch v. Mayor Council of WestPaterson, 130 N.J. Super. 104, 107-08. 325 A.2d 517, 519 (1974). "Deviation from the rule can invalidate the governmental action taken. The reason for such a drastic result is again simple: `to prevent the possibility of an official in a position of self-interest to deviate from his sworn public trust.'" BluffsDev. Co., Inc., v. The Board of Adjustment of PottawattamieCounty, Iowa, 499 N.W.2d 12, 14 (1993), citing Netluch,130 N.J. Super. at 108, 325 A.2d at 519.
With regard to your fourth question, you have inquired as to whether actions taken by Mr. Tony Bozynski, Mr. Joe Stanley, and Mr. Maurice Lewis, members of the Capitol Zoning District Commission, are appropriate with regard to a matter currently before the commission involving Baird, Inc. In your correspondence, you relate that Baird, Inc. has asked the commission to allow Donrey Outdoor Advertising to relocate a sign on a parcel of land which Donrey leases from Baird. You indicate that Mr. Bozynski and Mr. Stanley have disqualified themselves from participating in commission hearings concerning Baird's application due to conflicts of interest. You state that Mr. Bozynski, who is employed by the City of Little Rock, did not participate because Little Rock was simultaneously a party to negotiations with Baird on similar issues. With regard to Mr. Stanley, you state that his reasoning for disqualification was that the architectural firm of which he is a member has as a client, Stephens, Inc., which is the parent company of Donrey. You further indicate that Mr. Lewis participated in such hearings but did not vote in the initial meeting with Baird after his participation was challenged because of his business association with Donrey. You relate that, as Mr. Lewis is Executive Director of the Arkansas Hospitality Association, he is expected to lobby for and represent the interests of the association's members, and this represents a conflict of interest in the matter before the commission concerning Baird since Donrey is a "dues paying member" of the Arkansas Hospitality Association. With respect to each of these actions, you have asked that I render an assessment as to their appropriateness or inappropriateness.
With regard to Mr. Lewis, it is my opinion that his position as Executive Director of the Arkansas Hospitality Association does not, taken alone, constitute a conflict of interest with regard to the matter concerning Baird, Inc. While Donrey may be a member of the association, and as such contribute dues to the association, I assume that there are many other companies who are also members. Presumably, Mr. Lewis represents all the members of the association when acting as lobbyist for the group. As long as Mr. Lewis has no personal or pecuniary interests in the proceedings involving Baird, Inc. and Donrey that are distinct from the public interest, it is my opinion that he may participate in the zoning commission's actions regarding the company.
With regard to Mr. Bozynski and Mr. Stanley, it is my opinion that it would be inappropriate for me to second-guess their decisions to disqualify themselves from participating in the commission matter involving Baird and Donrey. The Arkansas Administrative Procedure Act requires all presiding officers and all officers participating in agency adjudications to "conduct themselves in an impartial manner" and these officers "may atany time withdraw if they deem themselves disqualified." A.C.A. § 25-15-213(2)(B) (Repl. 1992). [Emphasis added.][2]
Accordingly, if Mr. Bozynski and Mr. Stanley feel they have conflicts of interest in this matter, their actions with regard to disqualification should not be deemed inappropriate, especially since they are in the best position to know the factual circumstances surrounding the perceived conflicts.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] The agency specifically at issue in Acme Brick was the Arkansas Highway Commission. The Court stated that, since the commission is "authorized by statute to decide all matters which come before it" and since "[t]here is a right of appeal of the Commission's decisions to circuit court and to this court," the commission members perform a quasi-judicial function and "therefore, by analogy, should be subject to the appearance of bias standard for judges." Acme Brick, 307 Ark. at 368.
[2] For purposes of the Arkansas Administrative Procedure Act, "agency" is defined as "each board, commission, department, officer, or other authority of the government of the State of Arkansas, whether or not within, or subject to review by, another agency, except the General Assembly, the courts, and Governor." A.C.A. § 25-15-202(1) (Repl. 1992). Thus, the Capitol Zoning District Commission is an "agency" under the act, and the rules contained therein are applicable to the commission.